OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments to this court. Appellants, Lola Sterling and Gilbert L. Sterling, appeal the decision of the Jefferson County Court of Common Pleas granting summary judgment in favor of Appellees, Jack and Ethel Stevens, individually and d.b.a. Lake Lodge Mobile Home Village. The issue we must resolve is whether the Village should be held liable for Lola's slip and fall on the leased residential premises of her daughter caused by an indentation in the ground. Because the law requires that the operator of a mobile home park only keep the leased residential premises fit and habitable, the type of defect which allegedly caused Lola's injury does not constitute a violation of that statutory duty as a matter of law. Accordingly, the judgment of the trial court is affirmed.
 Facts and Standard of Review {¶ 2} Lola was helping her daughter and son-in-law, the Markers, relocate their trailer to Lot 24 in the Village from another lot. The tenants who had previously lived on Lot 24 had a deck on the front of their trailer. When those tenants vacated the lot, the deck was removed. According to deposition testimony, Lola slipped and fell exactly where the deck had been located.
 {¶ 3} The Sterlings claim Lot 24 remained empty for five and a half months after it was vacated and that the Village retained exclusive control over the lot. The Village's maintenance log indicates the Village and its alleged employee Robert Cline made certain repairs to the lot during the time it was vacant. There was also testimony that the owner of the Village, Ethel Stevens had mowed the lawn while the lot was vacant. However, Kenneth Marker also admitted to mowing the lawn on one or two occasions after leasing the lot.
 {¶ 4} Lola claims that at the time of the incident, her foot slipped into a hole in the ground, causing her to lose her balance, breaking one ankle. Lola then placed her other foot into the hole in the ground and broke the other ankle. The Sterlings filed suit against the Village claiming it had notice of the defect. Therefore, the Sterlings argued, it had the duty to place the lot back into a fit and habitable condition. The Village filed a motion for summary judgment on Sterlings' claim which was granted.
 {¶ 5} Although the Sterlings' have not presented this court with an assignment of error, it is apparent from the issues presented that the Sterlings believe the trial court improperly granted summary judgment in favor of the Village. When reviewing a trial court's granting of summary judgment, an appellate court applies the same standard used by the trial court. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829, 586 N.E.2d 1121. This court's review is, therefore, de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390,738 N.E.2d 1243. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Id.
 {¶ 6} The Sterlings have incorrectly argued this case as if it were a landlord-tenant situation subject to R.C. Chapter 5321. They should have based their claims upon R.C. Chapter 3733, which specifically governs tenancies in a mobile home park. In a similar case, the Ohio Supreme Court stated in the syllabus of Schwartz v. McAtee (1986),22 Ohio St.3d 14, "R.C. Chapter 5321 does not govern the relationship between manufactured home park operators and their tenants." Paragraph one at the syllabus. However, the Sterlings' error is not fatal for three reasons.
 {¶ 7} First, the wording of the statutes in each chapter are virtually identical. R.C. Chapter 3733.10(A)(2), which is applicable to this case, states: "(A) A park operator who is a party to a rental agreement shall: * * * Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition[.]" Id. Thus, the operator of a mobile home park has the same statutory duty under R.C. 3733.10(A)(2) as a landlord does under R.C.5321.04(A)(2). Secondly, as there appears to be no caselaw in Ohio addressing this statutory duty as it applies to a mobile home park operator, we will apply the analogous landlord-tenant caselaw. Finally, the Village was not prejudiced by this citation error as it was able to defend the Sterlings' core claim: that the Village breached its duty to maintain Lot 24 in a fit and habitable condition.
 Fitness and Habitability {¶ 8} In order to impose liability upon their landlord, a tenant has the burden of proving (1) that the landlord received notice of the defective condition of the rental premises; (2) that the landlord knew of the defect; or, (3) that the tenant had made reasonable but unsuccessful attempts to notify the landlord. See Shroades v. Rental Homes (1981),68 Ohio St.2d 20, 25-26. All of the above presumes the existence of a defect. Absent the existence of a defect, notice to the landlord is immaterial. McDaniels v. Petrosky (Feb. 5, 1998), 10th Dist. No. 97APE08-1027. Thus, before we reach the question of whether the Village had notice of the indentation on Lot 24, we must resolve whether the indentation could constitute a defect.
 {¶ 9} In order to be deemed a defect such that R.C. 3733.10
imposes liability, the Sterlings must demonstrate that the indentation in the ground made the premises unfit and uninhabitable. See Aldridge v.Englewood Village, Ltd. (July 22, 1987), 2nd Dist. No. 10251. The alleged defect at issue in Aldridge was a threshold riser of one and one quarter inches high leading from appellant's back door to her concrete patio. While exiting the apartment, appellant caught her toe on the threshold, fell to the surface of the patio and fractured her left arm. The case was dismissed by the court because the appellant failed to prove a breach of any legal duty. The Second District affirmed, reasoning, "Having not shown a defect rendering the premises unfit and uninhabitable, liability may not be predicated under [the applicable statute]." Id. at 3.
 {¶ 10} In a similar case, Taylor v. Alexander (July 11, 1983), 11th Dist. No. 3550, the court concluded that a defective handrail, or even the total absence of one, did not cause the premises to be unfit or uninhabitable. The Eleventh District affirmed summary judgment in favor of the appellees, explaining: "while [the applicable statute], speaks in terms of `fitness and habitability,' appellant does not contend that the absence of a handrail made the premises unfit for human habitation. Rather, the common law warranty of habitability deals with situations where the premises contain defective wiring, heat or water shortages, vermin infestations, etc. It cannot seriously be contended that the lack of a handrail, in and of itself, renders the premises substantially or wholly uninhabitable. Consequently, [this statute] cannot be used as a basis for imposing liability on appellee." Id. at 3.
 {¶ 11} Next, in Pease v. Croxton Realty (Dec. 7, 1992), 5th Dist. No. CA 8779, the tenant sustained injuries after tripping over a three to four inch "defect" between the driveway and the carport. The Fifth District affirmed the trial court's determination that this condition did not make the premises unfit or uninhabitable. "Based upon this record, the trial court was correct in concluding that as a matter of law this defect did not make the premises unfit and uninhabitable." Id. at 3.
 {¶ 12} Finally, in Parks v. Menyhart Plumbing and Heating SupplyCo., Inc (Dec. 9, 1999), 8th Dist. No. 75424, the Eighth District found that R.C. 5321.04(A)(3) which provides that a landlord shall "keep all common areas of the premises in a safe and sanitary condition"[1] had no application to the facts of that case. More specifically, Parks involved the plaintiff's slip and fall on the sidewalk leading to the porch of the residential premises leased from defendant.
 {¶ 13} "The issue then becomes whether the landlord could be charged with a violation of R.C. 5321.04(A)(2) which requires the landlord to `make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.' There is no evidence that a defect that did not even appear until the moment of the accident rendered these premises unfit or habitable [sic]. We also find that the defendant's motions for a directed verdict on the issue of fit and habitable (R.C. 5321.04(A)(2)) should have been granted.
 {¶ 14} "The meaning and interpretation of the statutory phrase `fit and habitable' will not be liberally construed to include that which does not clearly fall within the import of the statute. LaCourse v.Fleitz (1986), 28 Ohio St.3d 209, 503 N.E.2d 159. Having not shown a defect rendering the premises unfit and uninhabitable, liability may not be predicated under R.C. 5321.04(A)(2)." Id. at 4-5.
 {¶ 15} In the present case, the Sterlings claim that an indentation in the ground caused the premises to be unfit and uninhabitable. However, deposition testimony indicates that none of the people who traversed the property in the few days prior to the incident even noticed the indentation. The parties had to go back and search to find the indentation that Lola claims caused her fall. Notably, Lola's husband testified that the place where his wife fell was invisible to the naked eye and that he only found it by feeling around with his foot. Kenneth Marker testified that when he found the indentation, it appeared to be only 1 1/2 inches deep.
 {¶ 16} Consistent with the reasoning in Aldridge, Taylor andPease, we hold as a matter of law that an indentation in the ground would not be the type of defect contemplated by the General Assembly to impose liability via R.C. 3733.10(A)(2). Significantly, as in Parks, this "defect" was located on the residential premises, not in a common area. Thus, the Village was not required to keep that portion of the property "safe and sanitary", but instead was only required to keep it "fit and habitable." Also as in Parks, we will refrain from extending the plain meaning given by the legislature to the phrase "fit and habitable." To do otherwise would eliminate the distinction between that statutory phrase and "safe and sanitary."
 {¶ 17} In light of the above, we conclude that no reasonable fact-finder could determine that the alleged defect rendered the residential property unfit or uninhabitable. We conclude that as a matter of law the Sterlings have failed to establish a breach of the duty of fitness and habitability owed to Lola by the Village. The trial court properly granted summary judgment as a matter of law and the judgment of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.
[1] A virtually identical statutory duty is imposed upon mobile home park operators in R.C. 3733.10(A)(3).